# Exhibit A

Filed
1/5/2021 1:12 PM
**Beverley McGrew Walker**
District Clerk
Fort Bend County, Texas
Donald Evans

CAUSE NO. ___**21-DCV-279693**___

| | | |
|---|---|---|
| BRONSON MCCLELLAND | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | |
| | § | |
| KATY INDEPENDENT SCHOOL | § | |
| DISTRICT, KENNETH GREGORSKI, IN | § | |
| HIS INDIVIDUAL AND OFFICIAL | § | |
| CAPACITY AS SUPERINTENDENT FOR | § | |
| KATY INDEPENDENT SCHOOL | § | |
| DISTRICT, JUSTIN GRAHAM, IN HIS | § | |
| INDIVIDUAL AND OFFICIAL CAPACITY | § | |
| AS GENERAL COUNSEL FOR KATY | § | |
| INDEPENDENT SCHOOL DISTRICT, | § | |
| ARMSTRONG FORENSIC LABORATORY | § | |
| INC., KATY INDEPENDENT SCHOOL | § | FORT BEND COUNTY, TEXAS |
| DISTRICT POLICE DEPARTMENT, | § | |
| HENRY GAW, IN HIS INDIVIDUAL AND | § | |
| OFFICIAL CAPACITY AS CHIEF OF | § | |
| POLICE FOR KISD PD, ROBERT KEITH | § | |
| MEIER, IN HIS INDIVIDUAL AND | § | |
| OFFICIAL CAPACITY AS INTERIM OR | § | |
| TEMPORARY POLICE CHIEF AND/OR | § | |
| ASSISTANT POLICE CHIEF FOR KISD PD, | § | |
| KEN TABOR, IN HIS INDIVIDUAL AND | § | |
| OFFICIAL CAPACITY AS INTERIM OR | § | |
| TEMPORARY POLICE CHIEF AND/OR | § | |
| ASSISTANT POLICE CHIEF FOR KISD PD, | § | |
| STEPHANIE FULGENCIO, IN HER | § | |
| INDIVIDUAL AND OFFICIAL CAPACITY | § | |
| AS A POLICE OFFICER FOR KISD PD, | § | Fort Bend County - 240th Judicial District Court |
| and KISD BOARD OF TRUSTEES | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE COURT:

COMES NOW, BRONSON MCCLELLAND, Plaintiff, and complains of KATY

INDEPENDENT SCHOOL DISTRICT, KENNETH GREGORSKI, IN HIS INDIVIDUAL AND

OFFICIAL CAPACITY AS SUPERINTENDENT FOR KATY INDEPENDENT SCHOOL

DISTRICT, JUSTIN GRAHAM, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS

GENERAL COUNSEL FOR KATY INDEPENDENT SCHOOL DISTRICT, ARMSTRONG FORENSIC LABORATORY, INC., KATY INDEPENDENT SCHOOL DISTRICT POLICE DEPARTMENT, HENRY GAW, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS CHIEF OF POLICE FOR KISD PD, ROBERT KEITH MEIER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS INTERIM OR TEMPORARY POLICE CHIEF AND/OR ASSISTANT POLICE CHIEF FOR KISD PD, KEN TABOR, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS INTERIM OR TEMPORARY POLICE CHIEF AND/OR ASSISTANT POLICE CHIEF FOR KISD PD, STEPHANIE FULGENCIO, IN HER INDIVIDUAL AND OFFICIAL CAPACITY AS A POLICE OFFICER FOR KISD PD,  and KISD BOARD OF TRUSTEES, Defendants, and for cause of action shows:

### *Discovery Plan*

1.      Discovery in this case shall be conducted under Discovery Control Plan Level Two (2).

### *Parties & Service of Process*

2.      Plaintiff, BRONSON MCCLELLAND, is hereinafter referred to as "Plaintiff", and is a resident of Katy, Waller County, Texas.

3.      Defendant, KATY INDEPENDENT SCHOOL DISTRICT (hereinafter referred to as "KISD"), is a duly incorporated Texas governmental entity and operates public schools in the cities of Katy, Brookshire, Fulshear and Houston, Texas.  Plaintiff requests that service of process be issued upon Defendant, KISD, by serving its Superintendent, Kenneth Gregorski, at the central office of Katy Independent School District, 6301 South Stadium Lane, Katy, Texas  77494, or wherever he may be found.

4.     Defendant, KENNETH GREGORSKI, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS SUPERINTENDENT FOR KATY INDEPENDENT SCHOOL DISTRICT (hereinafter referred to as "GREGORSKI"), is an individual resident of the State of Texas. Plaintiff requests that service of process be issued upon Defendant, GREGORSKI, at the central office of Katy Independent School District, 6301 South Stadium Lane, Katy, Texas  77494, or wherever he may be found.

5.     Defendant, JUSTIN GRAHAM, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS GENERAL COUNSEL FOR KATY INDEPENDENT SCHOOL DISTRICT (hereinafter referred to as "GRAHAM") is an individual resident of the State of Texas.  Defendant, GRAHAM, may be served with process herein at the central office of Katy Independent School District, 6301 South Stadium Lane, Katy, Texas  77494, or wherever he may be found.

6.     Defendant, ARMSTRONG FORENSIC LABORATORY, INC. (hereinafter "ARMSTRONG") is a Texas corporation licensed to conduct business in the State of Texas. Defendant, ARMSTRONG may be served with process herein by service on its registered agent, Andrew T. Armstrong, 330 Loch'n Green Trail, Arlington, Texas  76012.

7.     Defendant, KATY INDEPENDENT SCHOOL DISTRICT POLICE DEPARTMENT (hereinafter "KISD PD") is an entity associated with KISD.  KISD PD may be served with process herein by service on the Chief of Police, Henry J. Gaw, at 20370 Franz Road, Katy, Texas  77449, or wherever he may be found.

8.     Defendant, HENRY GAW, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS CHIEF OF POLICE FOR KISD PD (hereinafter "GAW") is an individual resident of the State of Texas.  Defendant, GAW, may be served with process herein at 20370 Franz Road, Katy, Texas 77449, or wherever he may be found.

3

9.     Defendant, ROBERT KEITH MEIER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS INTERIM OR TEMPORARY POLICE CHIEF AND/OR ASSISTANT POLICE CHIEF FOR KISD PD (hereinafter "MEIER"), is an individual resident of the State of Texas. Defendant, MEIER, may be served with process herein at 20370 Franz Road, Katy, Texas 77449, or wherever he may be found.

10.     Defendant, KEN TABOR, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS INTERIM OR TEMPORARY POLICE CHIEF AND/OR ASSISTANT POLICE CHIEF FOR KISD PD (hereinafter "TABOR"), is an individual resident of the State of Texas. Defendant, TABOR, may be served with process herein at 20370 Franz Road, Katy, Texas 77449, or wherever he may be found.

11.     Defendant, STEPHANIE FULGENCIO, IN HER INDIVIDUAL AND OFFICIAL CAPACITY AS A POLICE OFFICER FOR KISD PD (hereinafter "FULGENCIO"), is an individual resident of the State of Texas. Defendant, FULGENCIO, may be served with process herein at 20370 Franz Road, Katy, Texas 77449, or wherever she may be found.

12.     Defendant, KISD BOARD OF TRUSTEES (hereinafter "TRUSTEES"), is a legal entity operating in Katy, Texas. Defendant, TRUSTEES, may be served with process herein by service on its President, ASHLEY VANN, wherever she may be found.

### *Jurisdiction*

13.     This Court has jurisdiction of this action because Plaintiff brings claims against the Defendants in their individual and official capacities pursuant to Section 1 of the Civil Rights Act of 1871, 42 U.S.C.S. § 1983, otherwise known as a 1983 cause of action. A Plaintiff is entitled to file a 1983 cause of action in state court.

14.     This Court also has jurisdiction of this action due to Article I, § 19 of the Constitution of the State of Texas.

15.     This Court also has jurisdiction of this claim on the basis that one or more of the Defendants are not entitled to governmental immunity under the laws of the State of Texas.

16.     This Court also has jurisdiction of this action due to various contracts between Plaintiff and one or more of the Defendants.  Those contracts were entered into in Ft. Bend County, Texas, and were also enforceable in Ft. Bend County, Texas.

17.     This Court also has jurisdiction of this action due to the fact that one or more of the Defendants, acting solely or in association with others, took certain action and/or refused to take certain action involving Plaintiff's rights.  All of the conduct attributable to this conspiracy were committed in Ft. Bend County, Texas.

### *Venue*

18.     Venue is proper in Fort Bend County, Texas because the actions of Defendants that are made the subject of this suit all occurred within Fort Bend County, Texas, KISD is located in Ft. Bend County, Texas and, upon information and belief, all Defendants are legal residents of Ft. Bend County, Texas.

### *Summary of the Factual Background*

19.     Texas state law changed on June 10, 2019 regarding procedures to determine whether a substance is legal hemp or illegal marijuana.  KISD has failed to follow this change in the law and/or incorporate it into its Discipline Management Plan & Student handbook.  KISD is not adhering to Texas law or what should be its own internal rules and regulations.  As a result, Plaintiff was wrongfully suspended and transferred to KISD's alternative school.

20. On September 17, 2020, a canine search unit allegedly determined there was an alleged illegal substance in Plaintiff's motor vehicle. Plaintiff's motor vehicle was searched and an alleged substance was purportedly removed from the carpet in the backseat passenger floorboard. Plaintiff was accused of being in possession of marijuana. Despite numerous requests, KISD has failed and refused and continues to fail and refuse to provide Plaintiff a copy of a body camera or any other form of recording to establish that any substance of any description was found and/or removed from Plaintiff's motor vehicle. A police report was generated by KISD PD. Katy High School generated their own report. The report stated that Plaintiff was "in possession of marijuana". Plaintiff was ultimately accused of being in violation of § 481 of the Texas Health & Safety Code as stated in KISD's handbook. That same day, Plaintiff was suspended from regular school and transferred to the alternative school for a period of not less than 45 days. At the time the police report was generated by FULGENCIO, neither KISD PD nor KISD had requested or obtained the necessary test to determine whether the substance allegedly found in Plaintiff's vehicle was in fact illegal marijuana as opposed to legal hemp. According to state law, there is a threshold test to distinguish between illegal marijuana and legal hemp. Simply field testing a substance to determine whether it contains THC is no longer sufficient to determine whether the same substance is marijuana. Moreover, FULGENCIO also made a representation that the amount of the purported substance removed from Plaintiff's vehicle was "not a usable quantity" as required by §481.121 of the Tex. Health & Safety Code. As a result, the fact that FULGENCIO determined the amount of substance was "not a usable quantity" as required by state law in Chapter 481 of the Tex. Health & Safety Code, the investigation and allegations should have been terminated immediately. Furthermore, the miniscule amount of substance allegedly found in Plaintiff's

6

vehicle was so small that it did not meet the minimal testing requirements of the DPS state lab, the DEA lab, the Harris County Forensic Science Lab, or any other government lab.

21.     On September 18, 2020, an on-campus hearing was conducted by Katy High School's principal  where testimony was taken and the principal collected information from Katy High School, KISD PD and Plaintiff and his family.  FULGENCIO again made a representation that there was "not a usable quantity" of any purported substance that could be properly tested to determine whether the THC amount was sufficient to establish that the substance was in fact illegal marijuana.  Later that evening, Plaintiff's father sent an email to Katy High School's principal requesting confirmation as to whether the alleged substance removed from the motor vehicle tested positive for hemp (legal) or marijuana (illegal).

22.     On September 21, 2020,  the principal wrote a report determining that Plaintiff was in possession of a substance that tested positive for THC.  Ahead of writing the report, the principal contacted KISD PD and someone instructed FULGENCIO to conduct a field test on the purported substance to determine whether it contained THC.  FULGENCIO removed half of the substance from the evidence bag that was kept at KISD PD's evidence locker and performed a field test.  The test conducted by FULGENCIO only determined whether the substance contained THC; not what concentration of THC was contained in the sample.  As stated above, §481 of the Tex. Health & Safety Code requires that the THC level be above a certain threshold amount before the substance can be considered illegal marijuana as opposed to legal hemp.  After FULGENCIO conducted the field test, she wrote a secondary report again identifying the substance as marijuana.

23.     On September 21, 2020, Plaintiff's suspension and transfer was upheld by the principal of Katy High School.  At all times relevant to Plaintiff's claims set forth herein, the TRUSTEES, KISD, GREGORSKI, GRAHAM and KISD PD, by through and under MEIER,

TABOR and GAW, had full and final authority to make all relevant decisions as to how they would treat Plaintiff with respect to his civil rights.

24. None of the Defendants had the alleged substance removed from the motor vehicle tested in accordance with Texas state law to determine whether the substance contained sufficient THC to be considered marijuana prior to December 3, 2020. The purported marijuana was allegedly seized from Plaintiff's vehicle on September 17, 2020. Therefore, the purported substance was held for approximately seventy-five days before it was shipped off to be tested by a private lab. The use of a private lab by KISD PD is believed to have been a break from standard operating procedure. KISD PD typically uses the crime lab operated by DPS and there is no known reason yet provided by Defendants as to why someone associated with the Defendants, if not one of the actual Defendants, decided to utilize the laboratory services of ARMSTRONG in lieu of the laboratory services provided by DPS. The Defendants should have tested the purported substance before accusing Plaintiff of being in possession of marijuana and/or before Plaintiff was suspended for forty-five days for the purported possession. Instead of following Texas state law and their own internal rules, KISD committed a rush to judgment by deciding the purported substance was in fact marijuana. This was a definite violation of Plaintiff's civil rights, including his right to due process and his right to equal protection. The Defendants have also never provided Plaintiff or his lawyers any portion of the purported substance in order to conduct their own testing. Moreover, despite having written notice to include Plaintiff's counsel in any inspection or testing of the purported sample, Defendants went forward with destructive testing. This form of testing did not result in Plaintiff being provided with enough of the remaining sample to have it tested at a crime lab or his choice. Defendants continuing to act outside the scope of their authority and in violation of state law regarding the requirements to establish possession further violated Plaintiff's due

8

process rights by not having the substance tested before accusing Plaintiff of any violation of state law. Thereafter, Defendants removed Plaintiff against his will and in violation of his liberty interests.

25. Prior to Plaintiff's parents continuing with the appeals process, they also negotiated the opportunity to either move out of state or relocate within the state to allow Plaintiff to continue school away from KISD.

26. Plaintiff's family's efforts to relocate to California were thwarted and the efforts to relocate within the State of Texas also failed. During the time of these efforts, Plaintiff received a letter from KISD Superintendent GREGORSKI admitting that the alleged substance removed from Plaintiff's motor vehicle had never been tested to determine whether the requisite amount of THC was present that would have indicated the substance was in fact illegal marijuana and not legal hemp as prescribed by Texas law. Along the same time, Plaintiff also received a Disciplinary Clearance form from the principal at Katy High School indicating that Plaintiff had never been placed on disciplinary probation. Additionally, Plaintiff received a PAPF UIL form signed on October 9, 2020 indicating there had been no disciplinary action and that Plaintiff was cleared.

27. On October 22, 2020, Plaintiff re-enrolled at Katy High School and was sent back to the alternative school even though GREGORSKI admitted that he had been cleared from any wrongdoing based on the fact that KISD did not run the proper test on the alleged substance removed from the motor vehicle. The letter prepared by GREGORSKI was given to Plaintiff in exchange for Plaintiff's agreement to *attempt* to relocate to California. The letter from GREGORSKI was not given to Plaintiff if Plaintiff relocated to California, but only if Plaintiff *attempted* to relocate to California. The letter was an exhibit to an agreement whereby Plaintiff

9

and KISD agreed that should Plaintiff not be able to enroll in the California high school, he would be permitted to return to KISD but would be immediately returned to the alternative school. However, nothing contained within the letter precluded Plaintiff from using the letter to then claim exoneration.  The letter was prepared solely by GRAHAM on behalf of GREGORSKI and KISD. Plaintiff exercised his final administrative appeal rights in an effort to convince KISD to rescind the suspension and transfer.  At the conclusion of the final appeal hearing, KISD refused to rescind the suspension and transfer and this suit was filed.

### *Drug Rules*

28.     Texas Health & Safety Code § 481.002 was amended by House Bill 1325 and became law on 10 June 2019 by adding subparagraph (26)(f) stating marijuana does not include hemp as that term is defined by Texas Agriculture Code § 121.001.  Texas Agriculture Code § 121.001 defines hemp as the plant Cannabis sativa L. and any part of that plant, including the seeds of the plant and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.  Texas Health & Safety Code §481.121a states that except as authorized by this Chapter, a person commits an offense if the person knowingly or intentionally possesses *a usable quantity of marijuana.*  The actual wording of the statute is as follows:

a)  Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally possesses ***a usable quantity of marihuana***. [emphasis added]

(b)  An offense under Subsection (a) is:

(1)  a Class B misdemeanor if the amount of marihuana possessed is two ounces or less;

(2)  a Class A misdemeanor if the amount of marihuana possessed is four ounces or less but more than two ounces;

10

> (3)  a state jail felony if the amount of marihuana possessed is five pounds or less but more than four ounces;
>
> (4)  a felony of the third degree if the amount of marihuana possessed is 50 pounds or less but more than 5 pounds;
>
> (5)  a felony of the second degree if the amount of marihuana possessed is 2,000 pounds or less but more than 50 pounds; and
>
> (6)  punishable by imprisonment in the Texas Department of Criminal Justice for life or for a term of not more than 99 years or less than 5 years, and a fine not to exceed \$50,000, if the amount of marihuana possessed is more than 2,000 pounds.

Therefore, before an individual may be accused of being in possession of marijuana, there must first be a threshold determination that the offending party had a usable quantity of marijuana in his possession to further understand this section, one must be clear that the substance be determined to be marijuana and be a "usable amount". Plaintiff was accused of being in possession of marijuana even though the purported substance was not tested to confirm it had the proper amount of THC nor was there ever a finding that there was a usable amount retrieved from Plaintiff's vehicle. This is especially true in light of the fact that there is no body cam evidence or any other evidence to support Defendants' contention that any substance at all was located in or removed from Plaintiff's vehicle. There is no KISD PD report from the officer who allegedly found the purported substance.

29.     Katy ISD Discipline Management Plan and Student Code of Conduct Published (June '19/June '20) - Quick Reference Guide Level IV requires removal to an alternative school with Marijuana (non-felony). Katy ISD policy (Legal), FNCRF (Local), FOC (Legal), and FOD (Legal) states no student shall, during any school term and while on school premises or off school premises at a school-sponsored activity, function, or event, sell, give, deliver, use, possess, or be under the influence of any amount of: 1. Marijuana or a controlled substance, as defined by

11

Chapter 481, Health and Safety Code or by 21 USC 801, et. seq.  A student SHALL BE REMOVED from class and placed in an alternative school if the student:  2(c) Sells, given or delivers to another person or possesses, uses, or is under the influence of:  (1) Marijuana or a controlled substance, as defined by Chapter 481, Health and Safety Code, or by 21 USC Section 801 et. seq.

30.     Texas Association of School Boards publishes Legal Questions About CBD and Marijuana in School (August 2019) – discusses what is CBD  and stated that CBD, or cannabidiol, is one of many naturally occurring chemical compounds of Cannabis Stavia L., the plant from which both marijuana and hemp are derived.  Tetrahydrocannabinol, or THC, is another compound of the cannabis plant.  The primary difference between hemp and marijuana is the amount of THC, which is the main component of marijuana that creates a "high" sensation.  Texas law has decriminalized CBD that is extracted from hemp.  Hemp is defined by law as the plant Cannabis stavia L. and any part of that plant with a THC concentration of no more than 0.3 percent.  TASB continues with stating that in 2019, the 86TH Texas Legislature enacted House Bill 1325, legalizing hemp and mandating a regulatory framework for the manufacture and sale of CONSUMABLE HEMP PRODUCTS.  Under Federal Law, CBD that is extracted from hemp and contains less than 0.3 percent THC is exempt from the Controlled Substances Act (21 USC § 801).  Under State Law, Texas Legislature followed the example of federal law by removing hemp form the state list of controlled substances.  If a product labeled CBD has a THC concentration of no more than 0.3 percent it is legal to use and possess.  TASB states that until these products are fully regulated, it is impossible to verify the contents without chemical testing.  TASB continues with stating that given the current problems with testing to determine whether a substance is legal, school officials may want to adopt a general ban on CBD.

*Claims Asserted*

*Claims for Violation of §1983*

31.     A Texas state court has jurisdiction to hear § 1983 claims under the express
language of § 1983 and state courts are required to exercise that jurisdiction.  § 1983, a federal
law, is part of the state law and a state court is unable to deny such a federal right absent a valid
excuse.  Therefore, the claims asserted by Plaintiff in this case under § 1983 can be adjudicated by
this Court.  § 1983 creates a remedy for violations of federal rights committed by persons acting
under color of state law.

32.     Defendants failed to follow the relevant provisions of Texas state law, resulting in
a Defendants' violation of Plaintiff's due process and equal protection rights.  The amount of
alleged substance found in Plaintiff's vehicle was not a usable amount as determined by
FULGENCIO.  Therefore, the accusation of POSSESSION OF MARIJUANA was not provable
and further criminal or administrative investigation should have ended immediately.  It is well
documented that KISD relies on and must follow the definition of § 481 of the Tex. Health &
Safety Code in order to determine if any student is in possession of marijuana. Moreover,
Defendants have failed to produce the body cam worn by Officer Pickett, who allegedly found and
removed the substance from Plaintiff's motor vehicle. Plaintiff has made numerous requests for
the body cam footage of Officer Pickett related to this incident  Despite the law and definition
contained within § 481 of the Tex. Health & Safety code requiring "a usable amount" KISD
proceeded with its administrative pursuit of Plaintiff.  In doing so, Defendants accused Plaintiff of
being in possession of marijuana before Defendants complied with Texas state law requiring the
substance be tested to determine that it had the requisite amount of THC to qualify as illegal
marijuana and not legal hemp.  Therefore, Defendants did not and cannot meet their burden of

13

proof to establish that the alleged substance found and removed from Plaintiff's vehicle was illegal marijuana and not legal hemp.   Defendants waited approximately 75 days to have the alleged substance tested in an attempt  to determine its identity.  This test was performed by a private lab (ARMSTRONG) instead of a state lab typically used by Defendants for similar testing procedures.

33.     Plaintiff made at least three written requests to KISD that if any destructive testing of the substance Defendants claim they removed from Plaintiff's motor vehicle was to be performed, that Plaintiff be placed on notice and given the opportunity to attend the testing or otherwise participate in the testing procedure.  Plaintiff further requested that Defendants make certain that they saved Plaintiff a requisite amount of the substance so that Plaintiff could perform his own testing.  Despite having received written notice on at least three occasions, Defendants had the substance tested without notice to Plaintiff, did not invite Plaintiff to the testing, and failed to save Plaintiff any portion of the substance so that Plaintiff could conduct his own testing.

34.     The above conduct on the part of the Defendants violated Plaintiff's due process rights and there is no sovereign/governmental immunity defense available to any of the Defendants who were acting in their official capacities since their individual and collective failure to abide by Texas state law creates the ultra vires exception.

35.     As a result of the above, Plaintiff has suffered damages in accordance with the various relevant provisions of § 1983.

### *Claims for Violation of Article I, § 19 of Texas Constitution*

36.     The Texas Constitution's due-course-of-law guarantee provides that no citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land, Tex. Const. Art. I, § 19. It is nearly

14

identical to the Fourteenth Amendment's due-process clause, which provides that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, U.S. Const. amend. XIV, § 1. While the Texas Constitution is textually different in that it refers to due course rather than due process, the Texas Supreme Court regards these terms as without meaningful distinction and thus have traditionally followed contemporary federal due process interpretations of procedural due process issues.

37.     A Texas state court has jurisdiction to hear violations of Plaintiff's procedural due process pursuant to Article I, § 19 of the Constitution of the State of Texas.  In order to consider Plaintiff's procedural due process claims, a Court must determine first whether the Plaintiff has a liberty or property interest that is entitled to due process protection and, if so, the Court must determine what process is actually due.  Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, the minimal requirements of due process must be satisfied and Texas state courts have jurisdiction over these types of claims.

38.     When school officials bring charges against a student, there is a significant risk of error because the controlling facts are in dispute and officials often must rely on circumstantial evidence and reports of others. *University of Tex. Medical Sch. v. Than,* 901 S.W. 2d 926, Tex. 1995.   This particular holding is important because Plaintiff, while going through the administrative appeal process, lost at different levels due to purported circumstantial evidence.  In fact, GRAHAM argued on behalf of KISD at an appeal hearing that there was no need for KISD to test the substance purportedly removed from Plaintiff's motor vehicle to determine whether it was actually illegal marijuana because Defendant KISD had other "circumstantial evidence" to support its claim.  GRAHAM and KISD believed they could circumvent their own internal rules

and Texas state law and uphold the allegations against Plaintiff without sending the purported substance to be properly tested. GRAHAM and KISD later provided Plaintiff's counsel a copy of ARMSTRONG's drug testing results in an effort to establish the content of the sample allegedly removed from Plaintiff's motor vehicle. The drug testing results were on one sheet of paper and not in admissible form. Since Plaintiff was precluded from participating in a portion of the evidentiary collection process, his due course of law rights were violated and he has a claim under Article I, § 19 of the Texas Constitution. The procedural defect is in the evidence relied upon by the appeal panel at the administrative level. The appeal panel(s) relied upon circumstantial evidence and inadmissible hearsay reports.

39.    As a result of the above, Plaintiff has suffered damages in accordance with the various relevant provisions of Art. I, § 19 of the Texas Constitution.

*Spoliation*

40.    As stated above, Plaintiff made at least three written requests for Defendants to include Plaintiff in any destructive testing of the purported samples allegedly removed from Plaintiff's vehicle since it was well known in November of 2020 that after KISD PD field tested a portion of the purported samples allegedly removed from Plaintiff's vehicle that only a minute remained available. Despite three written requests, Defendants sent the remaining portions of the purported samples removed from Plaintiff's vehicle to ARMSTRONG for testing and ignored all of Plaintiff's counsel's requests. ARMSTRONG somehow conducted a test on the sparce amount of the sample KISD PD had in its possession. According to the lab report prepared by ARMSTRONG, only a trace of the purported sample remains from the tests conducted by ARMSTRONG. Defendants have refused to provide any portion of the sample to Plaintiff for testing.

41.    The general definition of spoliation is the intentional or negligent destruction of evidence. Spoliation of evidence is the treatment of any tangible evidence or potential evidence in such a manner that it become unfit for use as evidence. Spoliation may be intentional, in which a person deliberately alters or destroys evidence, or it may be accidental, in which the evidence is allowed to decay or be destroyed. Willful spoliation of evidence which might affect a criminal matter is itself a crime. Willful spoliation of evidence affecting a civil matter may be a crime, depending on the circumstances and jurisdiction. Negligent spoliation of evidence in the control of an attorney is malpractice. Negligent spoliation of evidence is a particular tort brought by a litigant or would-be litigant harmed by the spoliation of evidence in someone's possession who actually knows it is likely to be evidence in a pending or likely civil action; who has a contractual, fiduciary, or other duty to maintain the evidence; which is essential to demonstrate a claim or a defense; and the loss of which will very likely alter that outcome of the action to the damage of one party. The party or would-be party harmed may bring the tort claim against the spoliator in most jurisdictions. Spoliation by a party in active litigation is subject to sanctions by the Court.

42.    To conclude that a party spoliated evidence, the court must find that (1) the spoliating party had a duty to reasonable preserve evidence, and (2) the party intentionally or negligently breached that duty by failing to do so. The spoliation of evidence is a serious issue. A party's failure to reasonably preserve discoverable evidence may significantly hamper the nonspoliating party's ability to present its claims or defenses and can undermine the truth-seeking function of the judicial system and the adjudicatory process. By failing to preserve even a portion of the purported samples allegedly removed from Plaintiff's vehicle so that Plaintiff could have the material tested at a lab of his choice, Defendants, deviating from their normal protocol, deprived Plaintiff of his constitutional rights. Under these circumstances, the Court should enter

17

an order denying Defendants the right to use the test results as evidence to support their claims against the Plaintiff.  Absent this evidence, Defendants can never meet their burden to prove that the purported substance was marijuana.  Thus, and in addition to the fact that KISD PD through Defendant FULGENCIO acknowledged there was not a usable amount of whatever substance Defendants claim was marijuana, Plaintiff should be exonerated, his civil rights restored such that he be permitted the opportunity to defend himself, and Defendants should be sanctioned under TRCP 215 for destroying evidence.  In the alternative, Plaintiff should be entitled to an instruction to the jury concerning Defendants' conduct.

*Declaratory Relief*

43.    A party may bring a suit seeking declaratory relief against government officials who allegedly act without legal or statutory authority.   A government official's illegal or unauthorized actions are not acts of the state.  Accordingly, an action to determine or protect a private party's rights against a government official who has acted without legal or statutory authority is not a suit against the state and hence sovereign immunity does not protect the government official.  In other words, there is a distinction between suits to determine a party's rights against a governmental entity from suits seeking only monetary damages.  A party can maintain a suit to determine its rights against a government official.

44.    Plaintiff seeks equitable relief pursuant to the Uniform Declaratory Judgment Act found in Tex. Civ. Prac. & Rem. Code § 37.  Specifically, Plaintiff seeks declaratory judgment that Defendants have failed to provide Plaintiff all of his constitutional rights to due process and equal protection.  Moreover, Plaintiff asserts that Defendants acted without legal authority and failed to perform required ministerial acts related to the manner in which they adhered to their own rules and procedures, together with Texas law, after they accused him of being in possession of

18

marijuana.  If the Court determines that Defendants acted without legal authority or failed to perform required ministerial acts such as videotaping the removal of the purported substance from Plaintiff's vehicle, having that purported substance tested to determine the level of THC if any contained therein, saving a portion of the amount ultimately tested to allow Plaintiff the legal right to perform his own test on the purported substance and honoring their post-suspension agreements with Plaintiff, then Plaintiff would be entitled to a declaratory judgment that would include but not be limited to findings that:  (1) Plaintiff's transcript reflect no disciplinary actions; (2) remove from Plaintiff's school records all references to his suspension and transfer and all documents concerning the charges against him; (3) treat Plaintiff as a student who graduated timely and in good standing from Katy High School; (4) issue Plaintiff a diploma and all documents necessary for his enrollment in any form of higher education and (5) award Plaintiff attorney's fees pursuant to Texas CPRC § 37.

<div align="center">*Breach of Contracts*</div>

45.     Plaintiff asserts that Defendants have breached at least three contractual obligations with Plaintiff.  First of all, Plaintiff and KISD entered into a settlement agreement that was drafted by GRAHAM.  Attached to the settlement agreement was a letter dated September 28, 2020 from GREGORSKI to Plaintiff's father.   Although the settlement agreement was considered confidential, the attachment was apparently leaked by someone associated with KISD.  Plaintiff contends that the letter leaked by KISD clears Plaintiff from any wrongdoing associated with the substance purportedly found in his motor vehicle but that Defendants refused to abide by the terms of the September 28, 2020 and allow Plaintiff to return to his home campus, Katy High School.  A copy of this letter is attached as Exhibit 1 to this amended petition and incorporated by reference as if fully set forth herein.

46.     Secondly, Plaintiff contends that he entered into a contract with KISD titled "Discipline Management Plan and Student Code of Conduct 2020-2021".  Plaintiff entered into this contract with KISD by paying $50.00 for his parking privileges and agreeing to abide by the terms and conditions of the Code of Conduct.  KISD agreed to provide Plaintiff parking privileges and abide by the terms of the Code of Conduct.  KISD breached this contract with Plaintiff when it failed to follow the provisions of § 481 of the Texas Health & Safety Code and attending language found on page 8 of the Code of Conduct.  Had KISD adhered to the terms of this contract with Plaintiff, the fact that FULGENCIO did not find a "usable amount" of substance should have resulted in the matter being closed immediately in accordance with § 481.121 of the Texas Health & Safety Code.

47.     Finally, Plaintiff contends that he entered into a contract with KISD whereby KISD would provide him an official  UIL state document indicating that Plaintiff was never suspended or removed from any school athletic program in exchange for Plaintiff and his parents attempting to relocate their residence to another town in Texas.  Plaintiff and his family made an effort to relocate to another town east of Austin, Texas and KISD provided Plaintiff with a Previous Athletic Participation Form ("PAPF").  The PAPF form is dated October 9, 2020.  This PAPF form, taken together with the September 28, 2020 letter from GREGORSKI, indicates that KISD had cleared Plaintiff and that there were no disciplinary matters pending.  If this were true, then KISD should have allowed Plaintiff to re-enroll at KISD and attend classes on campus at Katy High School.  In other words, in an effort to run Plaintiff out of town, Defendants promised to set aside all pending disciplinary matters against Plaintiff not realizing that setting them aside would thereafter allow Plaintiff to return to his regular classes.  The PAPF form is attached as Exhibit 2 to this amended petition and incorporated by reference as if fully set forth at length.

20

48.     Governmental entities such as school districts enjoy governmental immunity wherein the claims assert damages for money.  Plaintiff does not seek monetary damages from the Defendants and only seeks a Court Order that Defendants adhere to the terms of the actual contracts.  Therefore, Defendants should not be entitled to governmental immunity based on their refusal to honor the terms of their own agreement, especially when their refusal is tantamount to deliberate indifference to the constitutional rights of Plaintiff and willful misconduct.

*Claims Against ARMSTRONG*

49.     ARMSTRONG is a private laboratory that conducts drug testing.  ARMSTRONG holds itself out to be a competent testing facility that adheres to required rules and regulations related to the handling and testing of certain substances.  On September 21, 2020, after KISD PD and FULGENCIO conducted a field test on the substance purportedly removed from Plaintiff's vehicle, there was only .02 grams of substance remaining in the possession of KISD PD.  KISD and/or KISD PD contracted with ARMSTRONG whereby ARMSTRONG agreed to test the .02 grams.  However, ARMSTRONG knew or should have known that the .02 grams of remaining substance was an insufficient amount to permit ARMSTRONG to properly determine the amount of THC in the sample.  Instead, ARMSTRONG agreed to test the .02 grams of sample even though ARMSTRONG knew, or through the exercise of reasonable diligence should have known, that such a test would more likely than not violate even their own standard operating procedures and/or would leave Plaintiff with only a "trace" if any of the substance to perform his own testing.  Moreover, ARMSTRONG failed to contact Plaintiff or his representatives in advance of performing the destructive testing on the .02 grams to invite Plaintiff or his representatives to witness the testing and/or participate in the testing so that Plaintiff would have the same opportunity to test the purported substance in the same manner in which ARMSTRONG allegedly

tested the purported substance. ARMSTRONG's written report is an admission that ARMSTRONG did not and could not have followed any standard operating procedure utilized by competent testing facilities and is also an admission that ARMSTRONG failed to preserve an amount of the purported sample so that Plaintiff could conduct his own testing. ARMSTRONG knew or should have known prior to initiating its own testing protocol that there would be no discernable amount of the sample left after ARMSTRONG completed its testing. As a result, ARMSTRONG participated in the spoliation of the evidence utilized by KISD to form the basis of Plaintiff's suspension and transfer to the alternative school. ARMSTRONG should be liable to Plaintiff as a result of its conduct.

<div align="center"><em>Conspiracy Among KISD Entities and Personnel</em></div>

50.     The Supreme Court of Texas has determined that under Texas law, the elements of a civil conspiracy are (1) a combination of two or more persons; (2) the objective to be accomplished is an unlawful purpose or a lawful purpose by unlawful means; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. In this case, the Defendants, acting in concert with one another at different times with different partners, have committed certain acts and/or have failed to abide by their own rules and regulations, adhere to specific state laws, or otherwise take the necessary action to protect Plaintiff's civil rights. Plaintiff contends that on more than one occasion the Defendants, acting in concert with one another at different times with different partners, have committed these acts and omissions knowingly and with deliberate indifference toward Plaintiff's civil rights and such deliberate indifference is akin to willful misconduct. There is a level of planning associated with the conduct of the various Defendants and Defendants seem to have a collective "agenda" with respect to how they feel about Plaintiff. By way of example only, the TRUSTEES have allowed

GRAHAM to act in conflict during the administrative proceedings associated with Plaintiff's suspension and transfer, GRAHAM has on more than one occasion verbalized that Plaintiff would never again set foot on the football field for Katy High School or any other team in KISD (or words to that effect).  These words were spoken both in his office and in a telephone conference witnessed by several individuals.  Additionally, the fact that KISD and KISD PD would fail and refuse to turn over the body cam footage of any purported substance located or removed from Plaintiff's vehicle and thereafter failing and refusing to properly preserve a portion of the purported substance so that Plaintiff could conduct his own testing, is further evidence of Defendants' deliberate indifference and willful misconduct.  In addition to the above, KISD PD, acting by through and under MEIER, TABOR and GAW, failed to properly train and supervise their officers in how to handle the collection of evidence, including the need for and use of body cams, and evidence collection techniques.  Additionally, KISD PD, acting by through and under MEIER, TABOR and GAW, conspired to mishandle the substance purportedly removed from Plaintiff's vehicle and knew or should have known not to send the purported substance to ARMSTRONG since there was an insufficient amount of the purported substance to save any for Plaintiff.  MEIER, TABOR and GAW were at all times relevant to the issues in this matter, the actual or acting person in charge at KISD PD.  MEIER, TABOR and GAW should have initiated, installed and/or monitored training for KISD PD officers so that the officers would know that simply field testing a purported sample for THC would not automatically indicate that the purported sample was illegal marijuana and not legal hemp.  Had FULGENCIO, MEIER, TABOR, GAW or GRAHAM adhered to the requirements of § 481.121 of the Tex. Health & Safety Code the matter should not have been pursued.  Alternatively, had the required proper and timely testing been performed after the purported substance was removed from Plaintiff's vehicle on September 17, 2020, it is more likely

than not that none of the allegations at that point would have been pursued against Plaintiff by KISD and KISD would not have to later claim it was basing its position on "circumstantial evidence" and a hearsay lab test report from ARMSTRONG. Each of these KISD PD officers were in a position to know the current status of the law and each of them deprived Plaintiff of his constitutional rights to due process and equal protection by not properly adhering to state law. At least FULGENCIO at some point remembered that the amount of the purported substance allegedly removed from Plaintiff's vehicle was not a usable amount. Unfortunately, neither her training nor her supervision was sufficient enough to assist her with making these decisions at or near the time she prepared her police report and later supplement. As a result, faulty information was relied upon during the September 18, 2020 administrative hearing and later administrative appeal process which further resulted in denying Plaintiff his due process and equal protection rights. Finally, the KISD PD officer who allegedly "discovered" the purported substance from Plaintiff's vehicle was either not wearing a body cam or it was turned off. If that failure was not enough, KISD PD apparently never required this officer to file a police report indicating his activities on the day in question. Plaintiff has requested this report on numerous occasions from KISD and thus far has received no response as to its whereabouts.

*Permanent Injunction*

51.     Plaintiff seeks a permanent injunction precluding Defendants from refusing to adhere to the terms of their own rules and regulations, together with the laws of the State of Texas. Plaintiff further seeks a permanent injunction requiring Defendants to revise Plaintiff's school records to indicate that Plaintiff was not accused of being in possession of marijuana and that there were no disciplinary matters pending against at the time of his graduation. In addition, Plaintiff seeks an order from this Court permanently enjoining KISD to act as follows: (1) revising

24

Plaintiff's transcript reflect no disciplinary actions; (2) removing from Plaintiff's school records all references to his suspension and transfer and all documents concerning the charges against him; (3) treating Plaintiff as a student who graduated timely and in good standing from Katy High School; and (4) issuing Plaintiff a diploma and all documents necessary for his enrollment in any form of higher education.

### Attorney's Fees

52.      Pursuant to any and all available statutes, specifically including but not limited to, Section 37.001, *et seq.* of the Texas Civil Practice & Remedies Code and Chapter 38 of the Texas Civil Practice & Remedies Code, Plaintiff seeks to recover his reasonable and necessary attorney's fees.

### Actual and Exemplary Damages

53.      Plaintiff seeks all actual damages he is entitled to by virtue of the claims asserted herein.  Plaintiff seeks all statutory damages including nominal damages as applicable.  Plaintiff further seeks any punitive or other damages Plaintiff may be entitled to as a result of the willful misconduct and/or deliberate indifference of one or more of the Defendants acting separately or in concert with one another.

### Request for Disclosure

54.      Plaintiff respectfully requests that each Defendant provide the information outlined in Texas Rule of Civil Procedure 194.2 within fifty (50) days from the service of this Petition.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests the following relief:

1.      judgment against Defendants jointly and severally for the following:

   a.  violations of § 1983;

   b.  violations of Art. I, § 19 of the Constitution of the State of Texas;

      c.   spoliation of evidence;

      d.   a declaratory judgment as requested herein;

      e.   breach of contracts;

      f.   conspiracy; and

      g.   breach of any applicable duties;

2.     actual damages as applicable to the conduct above including but not limited to the final decision making authority enjoyed by the Defendants;

3.     an award of punitive damages or exemplary damages based upon Defendants' willful misconduct or deliberate indifference to the rights of Plaintiff in an appropriate amount to punish Defendants for their wrongful conduct;

4.     an award of reasonable and necessary attorneys' fees incurred by Plaintiff in the trial of this cause, together with all appeals, if any;

5.     a permanent injunction in accordance with the provisions of this pleading;

6.     costs of court and additional fees or costs authorized by statute; and

7.     such other and further relief, both general and special, legal or equitable, to which Plaintiff may be justly entitled.

Respectfully submitted,

**DONATI BRASHEAR Law Firm**

By: _____
    KEITH S. DONATI
    ksdonati@dblawfirm.com
    State Bar No. 05973100
    410 W. Grand Parkway S., Ste. 104
    Katy, Texas  77494
    Phone:  281-994-4034
    Fax:  281-994-4033
ATTORNEY FOR PLAINTIFF


Katy Independent School District

Ken Gregorski, Ed.D
SUPERINTENDENT

# CLEARED

September 28, 2020

Colburn McClelland
7019 Prairie Grass Ln,
Katy, Texas 77493

**VIA ELECTRONIC MAIL**

Re: Discipline Appeal

## Please note that this letter references student discipline, which is confidential by federal law.

Dear Mr. McClelland:

As is required at Katy ISD, the District has reviewed the alleged conduct of Bronson McClelland on September 17, 2020. In reviewing such discipline, Texas law requires that the District consider six factors, which include the "intent or lack of intent at the time the student engaged in the conduct" and the "student's disciplinary history." In light of these provision, I have determined the following.

On September 17, 2020, the District conducted a routine search of one of our high school parking lots. During that search, the canine alerted the vehicle driven to school by Bronson McClelland that morning. A search of the vehicle found an unusable amount of a substance that was field tested to contain THC. However, the District did not test the substance to determine whether the requisite amount of THC was present that would have indicated the substance was in fact marijuana as prescribed by Texas law.

During the campus level hearing, Bronson denied that the substance was his and his older brother came forward to give his account. His brother had recently totaled his personal vehicle and was temporarily using Bronson's vehicle. His brother admitted that the substance was his. Unlike Bronson, the brother has a history of marijuana related incidents and charges which are well known. Bronson does not have any past drug related charges or incidents that the District is aware of.

As such, I have determined that Bronson did not intend to possess the substance on campus. Therefore, the discipline given to Bronson McClelland on September 17, 2020 is overturned and no disciplinary matters are pending.

Regards,

Dr. Ken Gregorski
SUPERINTENDENT
KATY INDEPENDENT SCHOOL DISTRICT

# CLEARED

**PLAINTIFF'S EXHIBIT 1**

MCCLELLAND

Katy Independent School District • 6301 South Stadium Lane • Katy, Texas 77494
281.396.6000 • fax: 281.644.1800 • www.katyisd.org

Page 1 of 1

**Previous Athletic Participation Form**
**University Interscholastic League**

Page 1
Revised 08/01/17

For UIL Use Only

**Eligibility Questionnaire for New Student Athletes in Grades 9-12**
**This Form Must be on File with School Before Participation at any Level in Grade 9-12**
(To be filled out by the student and/or parent and filed with the school.)

Name of Student (print) **Bronson McClelland**          Grade **12**   Birthdate ▮▮▮▮   Age **19**

Student's Current Address: ▮▮▮▮          City ▮▮▮   State **TX**   Zip Code ▮▮

New School: **Manor**          City ▮▮▮   ☑ Public ☐ Charter ☐ Private School

Last School of Participation: **Katy**          City **Katy**   State **Texas** ☑ Public ☐ Charter ☐ Private School

Date of enrollment in new school: **10/08/2020**          Date of withdrawal from previous school: **09/29/2020**

Has the student been continuously enrolled in the new school for one calendar year? ☐ Yes ☑ No

| Yes | No | |
|---|---|---|
| ☑ | ☐ | **1. Has the student ever practiced or participated in extracurricular athletic activities (before school, after school or during an athletic period) at another school in the United States or Mexico in grades 8-12?** If yes, the student must complete page 2 in addition to page 1 and both pages must be sent to the District Executive Committee Chairperson. If no, the student must complete page 1 and file with the school and/or athletic department ONLY. |
| ☐ | ☑ | 2. Has the student ever enrolled or participated in a Magnet program, Charter school, Open/Choice Enrollment (within the ISD) or International Baccaluarte (IB) program in grades 9-12? **If yes, please provide the name of the school** _____ **and school year** _____. |
| | | **PARENT RESIDENCE RULE:** *QUESTIONS IN THIS SECTION ARE REFERRING TO BIOLOGICAL PARENTS. REFERENCE C&CR SECTION 440(B) & 442. |
| → | | 3. Does the student live with ☐ one parent ☑ both parents ☐ guardian ☐ foster parent(s)? If the student lives with a GUARDIAN or FOSTER PARENT(S), a UIL Parent Residence waiver may be required. You MUST contact the district Athletic Director/Coordinator then contact the UIL Athletics Department at (512) 471-5883. |
| → | | 4. Are the parents of the student ☑ married ☐ never married ☐ married- living apart ☐ divorced ☐ deceased? If the parents are MARRIED-LIVING APART or MARRIED and the student is LIVING WITH ONE PARENT, a UIL Parent Residence waiver may be required. You MUST contact the district Athletic Director/Coordinator then contact the UIL Athletics Department at (512) 471-5883. |
| ☐ | ☑ | 5. Does the parent(s) of the student reside outside the attendance zone of the school the student wishes to represent? If yes, a UIL Parent Residence waiver may be required. You MUST contact the district Athletic Director/Coordinator then contact the UIL Athletics Department at (512) 471-5883. |
| ☐ | ☑ | 6. Is there a change in schools but no change in address? If yes, please attach an explanation. |
| ☑ | ☐ | 7. Is more than one residence owned, rented or maintained by the parents? If yes, please attach an explanation. |
| ☐ | ☑ | 8. Are any members of the family still residing at the previous residence? If yes, it should be investigated prior to participation on the varsity level. |
| ☐ | ☑ | 9. Are there other family members in grades K-12 attending a different school district other than the school district the student is now attending? |
| | | **FULL TIME STUDENT RULE:** REFERENCE C&CR SECTION 403. |
| ☐ | ☑ | 10. Is the student enrolled in less than an average of four hours per day of instruction for either state or local high school credit? |
| | | **FOUR YEAR RULE AND AGE RULE:** REFERENCE C&CR SECTION 400 & 405(FOUR YEAR) & 440(C), 446 (AGE). |
| ☐ | ☑ | 11. Did the student first enroll in the 9th grade more than 4 years ago? The first date of enrollment in 9th grade. **08/14/2017** |
| ☐ | ☑ | 12. Has the student ever repeated a grade since first entering the 7th grade? If yes, please attach an explanation. |
| ☐ | ☑ | 13. Will (or was) the student 19 years of age on or before September 1 of the current school year? |
| | | **FOREIGN EXCHANGE RULE:** REFERENCE C&CR SECTION 468(3). |
| ☐ | ☑ | 14. Is the student a foreign exchange student? If yes, a Foreign Exchange Waiver is required for Varsity athletic participation. |
| | | **AMATEUR ATHLETIC RULE:** REFERENCE C&CR SECTION 441. |
| ☐ | ☑ | 15. Has the student done anything to jeopardize their amateur athletic status? |
| | | **ASSIST IN DETERMINING IF STUDENT CHANGED SCHOOLS FOR ATHLETIC PURPOSES:** REFERENCE C&CR SECTION 443. |
| ☐ | ☑ | 16. Did anyone from the new school contact the student prior to their enrollment in the new school? |
| ☐ | ☑ | 17. Was the student ever prohibited from participation at the previous school? If yes, please attach an explanation. |
| ☐ | ☑ | 18. Did the student play on a non-school team and is transferring to the school where members of the non-school team attend? |

**TO BE COMPLETED BY STUDENT, PARENT AND ADMINISTRATOR OF NEW SCHOOL**

It shall be the responsibility of each school to have on file the following required annual forms for each student who participates in any practice (before school, after school or during an athletic period), scrimmage or game: Preparticipation Physical Examination (for students in their first and third year of high school participation), Medical History Form, Illegal Steroid Use and Random Steroid Testing, Parent and Student Notification/Agreement Form, Acknowledgement of Rules Form, Concussion Acknowledgement Form and Sudden Cardiac Arrest Awareness Form. Incorrect or untrue information provided by the parent or student could cause ineligibility and could result in the forfeiture of contests in which the student has participated in addition to other penalties. The following signatures certify that to the best of your knowledge all the above information is true and correct.   PLAINTIFFS EXHIBIT 2

| | | | |
|---|---|---|---|
| **Bronson McClelland** | 10/09/2020 | **Colburn Ross McClelland** | 10/09/2020 |
| Signature of Student | Date | Signature of Parent/Guardian | Date |
| **James Keller** | 10/09/2020 | **Kristin Striemer** | 10/09/2020 |
| Signature of New School Coach | Date | Signature of New School Administrator | Date |
| **James Keller** | james.keller@manorisd.net | | **Football** |
| New School Coach Name | Coach's Email Address | | Sport |

**Previous Athletic Participation Form**
**University Interscholastic League**

Page 2
Revised 08/01/17

All new students in grades 9-12 who have ever practiced or participated in baseball, basketball, cross country, football, golf, soccer, softball, swimming and diving, team tennis, tennis, track and field, volleyball or wrestling in grades 8-12 at another school in the United States or Mexico MUST have this form completed by the last school of participation and be approved by the District Executive Committee before they are eligible to participate at the **VARSITY LEVEL** at the new school. A student being continuously enrolled for one calendar year still requires a Previous Athletic Participation form before they are eligible to participate at the **VARSITY LEVEL** in athletics.

Name of Student **Bronson McClelland**    New School: **Manor**    Last School of Participation: **Katy**

Student's current address: _____ **TX** _____
                          Street          City          State          Zip Code

**I.** **ELIGIBILITY CERTIFICATION:** This section should be completed by the individual(s) with whom the student is currently residing at the new school. We, the undersigned, certify that the student is in compliance with the transfer and admission policies of the local school district. This student is not changing schools for athletic purposes and was not recruited. We understand that any false or incorrect information could cause the student to be declared ineligible and could result in the forfeiture of contests in which the student has participated at the new school, in addition to other penalties.

**7019 Prairie Grass Lane Katy TX 77493**    Status of previous residence? ☐ sold ☐ leased ☐ vacant ☑ still own
Previous address

PARENT SIGNATURE **Colburn Ross McClelland**    DATE **10/09/2020**

**II.** **NEW SCHOOL CERTIFICATION:** We certify that to our knowledge no one from our community has offered any inducement, directly or indirectly to the student or parents to move into our district. To the best of our knowledge this student is not changing schools for athletic purposes.

**Manor**    **Kristin Striemer**    **10/09/2020**
Name of New School    Signature of new school superintendent or designated administrator    Date

**III.** **LAST SCHOOL OF PARTICIPATION CERTIFICATION AND RELEASE:** Section III must be completed for any new student in grades 9-12 who has ever participated in baseball, basketball, cross country, football, golf, soccer, softball, swimming and diving, team tennis, tennis, track and field, volleyball or wrestling in grades 8-12 at another school in the United States or Mexico before they are eligible to participate at the varsity level at the new school. Please check the appropriate responses below. **If any of questions 1-5 are marked 'Yes', a full meeting of the District Executive Committee (DEC) would be required only if requested by a member of the committee in the new district. If question 6 is marked 'Yes', a full hearing of the DEC is required in the new district.**

Yes  No

☐  ☑  1. Was there any conflict or dissatisfaction between the student, his/her parents, and the athletic/academic supervisors at the school?

☐  ☑  2. Was this student recruited to attend another school or was any undue influence exerted upon this student or family to change schools?

☐  ☑  3. Did this student quit an athletic activity or program while enrolled in your school? **If yes, attach explanation to DEC.**

☐  ☑  4. Was this student ever suspended or removed from your school athletic program? **If yes, attach explanation to DEC.**

☐  ☑  5. Would the student be prohibited from participation in athletics had they not changed schools? **If yes, attach explanation to DEC.**

☐  ☑  6. Based on your knowledge of the student and their circumstances, is this student changing schools for athletic purposes? **If yes, attach explanation to DEC.**

**Gary Joseph**
Print Name of Former superintendent or designated administrator    Print Name of Former principal or coach

**Gary Joseph**    **10/09/2020**
*Signature of Former superintendent or designated administrator    **AND**    *Signature of Former principal or coach    Date Signed
(* two signatures required)

Last School of Participation: **Katy**    City **Katy**    State **Texas**

**IV.** **EXECUTIVE COMMITTEE APPROVAL:** We certify the above named student is approved.
Check the appropriate box: ☐ Varsity ☐ Sub-varsity only ( ☐ applying for a Waiver)
If a full hearing of the DEC is required based on the information in section III above, the student is ineligible for varsity athletic participation until the DEC hears testimony from the previous school, the student/parent and the new school and determines that the student did not change schools for athletic purposes. This process is required to be completed prior to the student applying for a waiver of the parent residence rule, if applicable. **DATE OF HEARING** _____

School _____ Conference _____ District No. _____
(School of District Executive Committee Chairman)

Signature of District Executive Committee Chairman    Date    Contact Email Address

The District Chairman makes two copies of the completed form. Send one copy to the student's current school and the other copy to the University Interscholastic League, Box 8028, University Station, Austin, Texas, 78713. Retain the original in your file